CASE 11—PETITION EQUITY—JANUARY 29.

## The John R. Proctor Land Co. v. Cooke.

APPEAL FROM LINCOLN CIRCUIT COURT.

1. CORPORATIONG—ASSESSMENT OF STOCKHOLDERS—PAYMENT FOR STOCK IN LAND.—A stockholder in an insolvent corporation, who has paid his stock subscription in full by the transfer of a tract of land in good faith at an agreed value for the use of the company's business, is not liable in equity to a creditor of the corporation, who had knowledge and consented to the transaction at the time, solely upon the ground, that the land turned out to

John R. Proctor Land Co. v. Cooke.

be of less value than they agreed upon; nor can stockholders who have paid the full par value of their stock be held liable or made to pay any sum, in addition thereto for the company, unless they have expressly stipulated to subject themselves to such assessment, or the corporate charter or the general law provides otherwise.

J. B. PAXTON FOR APPELLANT.

1. It is manifest from the whole transaction and from the minutes in the stockholders' meetings that the company only accepted the treasury stock and assumed the deferred payments on condition that it could dispose of the stock for a sufficient sum with which to satisfy the deferred payments; and that if it was unable to do so, it reserved the right of assessing the subscribers of stock for that purpose; if that was not true why was not the stock delivered to the stockholders instead of being placed in escrow in the hands of the bank?

2. The provision in the minutes that the stock was "to be held in trust by said bank until said deferred payments on said land are paid in full as contemplated at said stockholders' meeting or otherwise," meant that if the said deferred payments were not paid in the manner contemplated by the meeting, namely, by the sale of the treasury stock, that then there was to be an assessment upon the stock subscription. Downing v. Marshall, 23 N. Y., 388; Commonwealth v. Rice, 9 Met., 258.

3. The stockholders, including appellee, from the beginning understood that their stock was subject to assessment; and where the meaning is doubtful such construction by the parties is of great weight in determining the true meaning. Clark on Contracts, pages 589 and 594.

J. W. ALCORN FOR APPELLEE.

1. Unless the corporate charter or general laws provide otherwise, a stockholder in a corporation, who has paid in the full par value of his stock, is not liable and can not be made to pay any more in addition thereto. Cook on Stockholders, sec. 47 and 241.

2. Land may be taken in payment of stock subscriptions to a corporation, if the corporation itself would be allowed to purchase the same. Cook on Stockholders, sec. 14; Morawetz on Private Corporations, sec. 425.

[7]

3. But if the stock was not fully paid up the company assumed the payment of the deferred payments on the land, and is estopped from making or enforcing against the appellee any assessment for that purpose.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

Appellant was incorporated in April, 1890, under the laws of the State of Tennessee, for the purpose of locating, establishing and building towns and cities, and for purchase, improvement, development and sale of real estate, and was by its charter authorized to elect a board of directors, make regulations concerning the subscription for its stock, fix the amount of capital to be invested in the enterprise and the division of same into shares. On the 18th day of April, 1890, the stockholders at a regular meeting elected a board of directors and fixed the amount of the capital stock at five hundred thousand dollars, to be divided into five thousand shares of one hundred dollars each, and J. W. Fletcher and A. B. Bowman subscribed for one-fifth each of the capital stock; W. E. Gibbins, W. C. Crozier, J. M. Wilson, L. B. Cooke and John R. Proctor for one-tenth each, and W. H. Henderson, Jr., H. M. Wilson and Miss Belle Cox for one-thirtieth each. At the same meeting all of the stockholders except Miss Belle Cox were elected directors, W. E. Gibbins being chosen president, J. W. Fletcher secretary and general manager, and A. B. Bowman, treasurer; and at the same time it was unanimously determined that the directors be authorized and directed to purchase four hundred and twenty acres of land which was owned by the stockholders in the same proportion as they had subscribed for the capital stock of the company, lying near Johnson City, Tenn., on which

there was a lien for purchase money amounting to two-thirds of the cost price, or $66,666, and issue in payment therefor, certificates of stock for five thousand full paid shares of the value of one hundred dollars each, each stockholder receiving his proportion thereof.   It was further agreed that two thousand shares of this stock, to be contributed *pro rata* by the stockholders, should be returned to the treasury of the company, which was to be known as "treasury stock," and in consideration of which the company should assume all the deferred payments on the land.   This treasury stock was to be sold by the directors and the proceeds used to pay the deferred payments due on the land, and the balance used as a development fund or as the directors might determine.   It was further agreed that the three thousand shares of full paid stock issued to the stockholders should be held in trust by the company in the vault of the Watauga Bank until the deferred payments due on the land should be fully paid and cancelled.

And on the same day a meeting of the directors was held, at which it was ordered that "The president and secretary be authorized to accept deeds for the four hundred and twenty acres of land more or less, consisting of the lands of A. B. Bowman, W. T. Range, and D. J. Wheeler, and by the authority conferred by the stockholders at their meeting held this day, issue to J. W. Fletcher and associates three thousand shares of one hundred dollars each, fully paid stock in the proportion named at said meeting, retaining the two thousand shares as treasury stock to be disposed of as contemplated.   The company assuming the deferred payments on said land, and when said three thousand shares of stock

is issued said officers shall deposit the same in the vault of the Watauga Bank, to be held in trust by said bank until said deferred payments on said land are paid in full as contemplated at said stockholders' meeting, or otherwise, and when said payments are made, the said stock shall then be delivered to the parties named, or their assignees."

It appears from the testimony of the president of the corporation, that the directors failed to find purchasers for any of the stock left with them to be sold to discharge the unpaid purchase money due on the real estate at the date of its transfer to the company, the "boom" in that locality having completely exploded, and that subsequently thereto, by arrangement with the original vendors, all of the land was taken back for the unpaid purchase money, except a tract of twenty-eight acres, known as the Wheeler tract, which had originally cost about nine thousand dollars.    It appears however, that upon the maturity of the second installment of the purchase money due for the land which had been assumed by the company, that the company borrowed ten or twelve thousand dollars, in order to make a payment thereon, for which it executed its obligations, which were endorsed by the president of the company, Gibbins, and the treasurer, Bowman, and which they were subsequently compelled to take up and discharge, and that thereafter a resolution was passed levying an assessment upon the stock of each stockholder to repay to them this money; and this suit was instituted by the corporation to collect from appellee his proportion of the assessment calls made on his subscription to its capital stock to discharge the debts aforesaid, which he resists, and relies upon two grounds of defense.

First—He says that at the time he made his subscription to the capital stock of the company he and his associates conveyed the four hundred and twenty acres of land to the company in full satisfaction of their subscriptions to the capital stock thereof, and that the company, pursuant to their contract and agreement, issued to them in payment therefor certificates for full paid stock and had accepted the land in satisfaction and discharge of their respective subscriptions to its capital stock before any of the assessments sued for were made; that the deferred payments on the land had been fully satisfied and discharged previous to that time, and that by reason of these facts the assessments sued for were invalid and unauthorized.

Second—It is alleged that at the time of the transfer of the land by appellee and his co-owners to the company they had, by agreement with the company, turned over to them two thousand shares full paid stock of the company of the par value of one hundred dollars each; that the company had accepted this stock and in consideration thereof had undertaken and agreed to pay all the deferred payments on the land, and that the debts alleged to be due by the company to pay which the assessments were levied were contracted with full knowledge on the part of the company and the endorsers on same of these facts.

The issues being made up, by agreement the law and facts were submitted to the chancellor, who found for the appellee, and this appeal is to test the sufficiency of the defense relied on.

The minute-books of the corporation, which are quoted above, appear to support the contention of appellee as to the

facts. It should be borne in mind that this is a suit between the company and a stockholder, and the defense relied on is that by contract with the company he has fully satisfied and paid his subscription by a transfer of real estate, which the company accepted from him in full satisfaction and discharge thereof. There is no allegation that the real estate transferred was not of the par value of the amount of the subscription, and no fraud in this transaction, is alleged. The parties to whom the alleged indebtedness is going were the chief officers and agents of this corporation, and were fully aware of the conditions upon which the subscriptions to the capital stock were made and acted with full knowledge of the conditions on which the property had been transferred to the company and the stock issued by it.

And it would seem that the only question presented is whether or not the real estate was transferred to and accepted by the company in payment and discharge of the subscriptions of stock; and the only evidence bearing upon this question, is the record of the stockholders' meeting held April 18, 1890, and that of the directors' meeting held on the same day, pursuant thereto, which have been quoted above.

Appellant contends that there was never an unconditional acceptance of the land in satisfaction of the subscriptions made to the capital stock, and relies in support of its contention upon the fact that the three thousand shares issued in payment thereof to the stockholders were required to be "deposited in the vault of the bank, to be held in trust by said bank until the deferred payments on the land were paid in full as contemplated in the stockholders' meeting, or otherwise;" that the word "otherwise" includes every other way

in which appellant could have satisfied the deferred payments; that this gave to the company the right of assessment upon the stock to provide funds for the payment of debts legally contracted by the company, and insists that appellee recognized this right because at the date of the first assessment for five thousand dollars for grading and developing purposes, he was present at the meeting of the directors and subsequently paid three-fifths of the assessment made upon him.

It appears from the record that appellee attended only three meetings of the company after its organization, and that he paid three thousand three hundred and thirty-three dollars, his proportion of the first installment upon the purchase price of the tract of land sold the company; and it must be borne in mind that the first assessment was for grading and developing purposes alone, and had no connection whatever with the payment of the unpaid purchase money due on the land, which the company had assumed, and for which the debts were contracted.

It seems to us that the contention is inconsistent with the agreement between the parties, as evidenced by the resolution upon the minute-book of the company, that in consideration of the two thousand shares of stock the company assumed the payment of the land debt, and that the word "otherwise" could more properly be construed to mean the payment of these debts by a sale of lots, or of the land itself, in the contingency that they should be unable to dispose of the two thousand shares of treasury stock, which manifestly was not anticipated. And it is more reasonable to believe that the purpose of depositing the three thousand shares of

stock in the bank, was simply an agreement on the part of the stockholders to pool this stock, in order that it might not compete with the sale of the two thousand shares of treasury stock which the company had determined to put upon the market; and also to keep the control and management of the affairs of the company in the hands of its incorporators until these debts should be discharged.

Stockholders who have paid the full par value of their stock are not liable, and can not be made to pay any sums additional thereto for the company, unless they have expressly stipulated to subject themselves to such assessment, or a corporate charter or general statute provides otherwise, as it is one of the distinguishing features of corporations that the individual property of its members may be exempt from liability for corporate debts; and it is this fact which has inspired the creation of many incorporated companies organized for speculative purposes. (See Cook on Stock and Stockholders, section 241.) And even where stock is paid for at less than par value, under a fair understanding between the corporation and the stockholders the contract is valid as between the company and the stockholders (see Scovill v. Fair, 105 U. S. S. C. Rep., 153); and a stockholder in an insolvent corporation who has paid his stock subscription in full by a transfer of a tract of land in good faith at an agreed value for the use of the company's business, is not liable in equity to a creditor of the corporation who had knowledge and consented to the transaction at the time it took place, solely upon the ground that the land turned out to be of less value than was agreed upon. (See Bank of Fort Madison v. Alden, 129 U. S., 372.)

John R. Proctor Land Co. v. Cooke.

It appears from the testimony that the creditors of this corporation, who are seeking through the corporation itself to collect these assessments from appellee for the purpose of reimbursing them for payments made by them for the company, were the original incorporators, have always been the chief officers of the company and voluntarily assumed the obligations of the company with a full knowledge of the conditions upon which the land was transferred to the company and the stock issued in payment therefor.   There was no deception or misrepresentation of any kind to induce them to become the security of the company, and in our opinion this suit can not be sustained by the assumption that by the conveyance of the land appellee had not paid up all he had contracted or was bound to pay by his subscription.

It also appears from the testimony that the corporation itself still owns the tract of twenty-eight acres of land, which cost them nine thousand dollars, and which should be first subjected to the payment of the company's debts.   It appears to us that the conclusions reached by the chancellor are supported by the law and facts of this case.

Wherefore the judgment is affirmed.